IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

CARLTON BROWN,

        **Plaintiff,**

v.
                                          **CIVIL ACTION NO.: 3:21-CV-146**
                                          **(GROH)**

UNITED STATES OF AMERICA,
R. HUDGINS,
CAPTAIN HAGGAMYER,
DOE,
        **Defendants.**

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

On September 8, 2021, the *pro se* Plaintiff, who is a federal prisoner incarcerated at USP Hazelton, in Bruceton Mills, West Virginia, initiated this case by filing a complaint with the Clerk, pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).  ECF No. 1.[1]  On the same Plaintiff filed a separate complaint pursuant to the Federal Tort Claims Act (FTCA) , 28 U.S.C. § 2671, in case number 5:21-CV-159.  Plaintiff was notified by the Court on September 20, 2021, of the potential consequences of pursuing both a Federal Tort Claims Act and Bivens complaint simultaneously.  ECF No. 6.  Plaintiff responded on October 4, 2021[2], and

---

[1]  All CM/ECF numbers cited herein are from the instant case, 3:21-CV-146, unless otherwise noted.

[2]  The "Notification by Plaintiff" was filed with the Clerk on October 4, 2021, but executed by Plaintiff on September 27, 2021.  ECF No. 8.

elected to continue to proceed both actions.   ECF No. 8. Those two actions were consolidated by order entered October 20, 2021.  ECF No. 10.

Plaintiff claims he is entitled to damages under both <u>Bivens</u> and the Federal Tort Claims Act for acts which allegedly occurred at USP Hazelton in the Northern District of West Virginia.   On November 4, 2021, the Court entered an order which noted that Plaintiff paid the full filing fee of $402.00 in action number 5:21-CV-159, and accordingly, Plaintiff was deemed to have paid the entirety of the filing fee in this consolidated action. ECF No. 16.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2.  For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed without prejudice.

## II.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff's claims in his Bivens and FTCA complaints are predicated on his assertions that on February 3, 2021, the recreation yard at USP Hazelton was covered in ice and snow, and that employees and staff failed to create a "clear path" for inmates to walk to and from the yard.  Plaintiff claims that on that date he slipped, fell, and broke his ankle in several places.  Further, Plaintiff contends that he required assistance from fellow inmates to walk back to his cell.  Plaintiff asserts that he reported his injury immediately upon returning to his cell.  However, Plaintiff claims he did not receive treatment for his injuries until February 5, 2021, after multiple phone calls from his daughter to USP Hazelton to complain about Plaintiff's injuries and lack of treatment.  Plaintiff further claims

2

that after February 5, 2021, he was denied appropriate medical care on an ongoing basis.

## A.    Claims in the Bivens Complaint, 3:21-CV-146

The Bivens complaint alleges three claims for relief, that Defendants Hudgins, Haggamyer and Doe were deliberately indifferent to: (1) Plaintiff's safety, by failing to ensure there was a clear path through snow and ice, which led Plaintiff to slip and fall and incur a serious medical injury [ECF No. 1 at 7]; (2) Plaintiff's safety, by failing to adequately train or supervise subordinates, which resulted in Plaintiff's serious injury [Id. at 10]; and (3) Plaintiff's serious medical needs, failing to provide adequate training and supervision of medical staff resulting in injury and wanton infliction or pain and suffering [Id.].

Plaintiff asserts that compound officers learned of his fall and possible injuries but "did not contact the medical department of the prison." Id. at 8. Plaintiff contends that after he returned to his cell, Unit 2C officers contacted the medical department, but the on-duty medical personnel "refused to see" him. Id. at 11 – 12. As a result, Plaintiff claims he was forced to walk and work on his broken ankle for days without pain medication, prosthetics, or medical duty restrictions. Id. at 12. Plaintiff asserts that he did not receive medical treatment until February 5, 2021, after his daughter repeatedly called USP Hazelton to speak to medical personnel. Id. On February 5, 2021, Plaintiff was examined, given an x-ray, and determined to have broken his ankle in several places. Id. According to Plaintiff he continued to have pain and medical complications with his ankle, with continued swelling as late as July 12, 2021, more than five months after his injury. Id.

Plaintiff claims he suffered the following injuries: (1) permanent and substantial deformity of his right foot; (2) limited use of his right foot; (3) mental anguish; (4) chronic pain and suffering; and (5) "8th Amendment constitutional injury". Id. at 16.

3

Plaintiff seeks $50,000.00 jointly and severally from each defendant for compensatory damages, $100,000.00 in punitive damages from each defendant, court costs, attorneys' fees, and any applicable interest.  Id.

### B.   Claims in the FTCA Complaint, 5:21-CV-159

After exhausting his administrative remedies[3], Plaintiff's FTCA complaint asserts four claims for relief: (1) negligence on February 5, 2021, when PA Byrd issued a medical duty status that did not restrict Plaintiff's activities, thereby requiring him to continue standing for work on his fractured ankle [ECF No. 1 at 6, 11]; (2) "medical negligence breach of duty" on February 3, 2021, when Plaintiff returned to his cell, he requested that correctional officers contact the medical department, but was denied medical treatment [Id. at 7, 14 – 15]; (3) "negligent supervision by failure to provide reasonable safety" or provide a clear path on sidewalks and in the yard running and walk areas [Id. at 7, 18 – 19]; and (4) "negligent supervision by failure to provide duty of care owed to plaintiff" [Id. at 8, 23].

Plaintiff claims he suffered "permanent and substantial physical deformity of limb", pain and suffering, mental anguish, and "the loss of ability to enjoy life".  Id. at 24.

As damages, Plaintiff seeks $750,000.00 for his injuries, attorneys' fees, court costs, and any applicable interest.  Id.

### C.   Motion to Dismiss for Lack of Jurisdiction

On May 31, 2022, Defendants filed a single motion to dismiss or for summary

---

[3]  Plaintiff attached to his complaint copies of (1) a June 28, 2021, denial, and (2) an August 17, 2021, denial of a request for reconsideration of Plaintiff's administrative claim number TRT-MXR-2021-03998.  5:21-CV-159, ECF Nos. 1-2, 1-3.  Both of those denials from the BOP Mid-Atlantic Regional Office state, "If you are not satisfied with our determination in this matter, you may file suit in the appropriate U.S. District Court not later than six months after the date of this letter."  Id.

judgment [ECF No. 35], accompanied by two memoranda in support thereof, one memorandum as to Plaintiff's FTCA complaint [ECF No. 36], and one memorandum as to Plaintiff's Bivens complaint [ECF No. 37].  Additionally, Defendants filed three exhibits in support thereof.  ECF Nos. 36-1 through 36-3, 37-1 through 37-3.[4]

Defendants argue that all of Plaintiff's <u>Bivens</u> claims should be dismissed because: (1) Plaintiff failed to exhaust his administrative remedies prior to filing suit in this court [ECF No. 37 at 10 – 12]; (2) Defendants are entitled to qualified immunity [<u>Id.</u> at 12 – 13]; (3) Bivens remedies should not be extended to encompass Plaintiff's claims [<u>Id.</u> at 13 – 18]; (4) Plaintiff fails to allege specific facts of personal involvement by Hudgins, Haggamyer, and Doe [Id. at 19 – 20]; and (5) Doe is insufficiently identified, and thus plaintiff has failed to prosecute his claim [<u>Id.</u> at 20 – 21].

Defendants argue that Plaintiff's FTCA claims should be dismissed because: (1) Plaintiff fails to state a claim upon which relief may be granted [ECF No. 36 at 8 – 9]; (2) the discretionary function exception to the FTCA, codified at 28 U.S.C. 2680(a), shields Defendants from liability from Counts 1, 3, and 4, of Plaintiff's FTCA complaint [<u>Id.</u> at 9 – 15]; (3) under West Virginia state law Plaintiff had a duty to observe any open and obvious dangers [<u>Id.</u> at 15 – 18]; and (4) Plaintiff "received appropriate, timely, and adequate medical care" [<u>Id.</u> at 18 – 21].

Medical records submitted by Defendants include the following notation regarding when Plaintiff first reported his injury, "Inmate notified housing unit officers and pharmacy during AM pill line on 2/5 that his right foot and ankle are swollen from hurting it on the rec yard Wednesday (2/3)."  ECF No. 37-2 at 8.  Further, those medical records show

---

[4]  Exhibits ECF Nos. 36-1 through 36-3 are identical to exhibits ECF Nos. 37-1 through 37-3.

that Plaintiff was treated on at least twelve dates from February through November 2021: (1) February 5, 2021, (2) March 9, 2021, (3) April 8, 2021, (4) May 26, 2021, (5) June 12, 2021, (6) June 28, 2021, (7) July 12, 2021, (8) August 20, 2021, (9) September 2, 2021, (10) October 6, 2021, (11) November 10, 2021, and (12) November 19, 2021.  ECF No. 36-2.

As to Defendants' argument related to dismissal of Counts 1, 3, and 4 of the FTCA complaint, Defendants contend that Plaintiff cannot meet his two-part burden to state a claim that is not barred by the discretionary function exception, and therefore, his complaint should be dismissed.  ECF No. 36 at 8.  Defendants cite to the two-part test articulated in Berkovitz v. United States, 486 U.S. 531, 536 – 37 (1988), and United States v. Gaubert, 499 U.S. 315, 322 – 23 (1991), that "(1) the action complained of must involve an element of judgment or choice; and (2) the action must relate to considerations of public policy."  Id. at 10 – 11.  Defendants contend that pursuant to 18 U.S.C. § 4042(a), the BOP is required, to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  Id. at 13.  However, Defendants assert that the statute "merely outlines the general duties of the BOP" and the "BOP is clearly left with an element of discretion or judgment . . . in determining how to fulfill its obligations under this statute."  Id.  Accordingly, Defendants argue that any decision to permit inmates to engage in outdoor recreation involves an element of choice, and thus Plaintiff cannot meet the first prong of the discretionary function test.  Id. at 14.

Further, Defendants argue that Plaintiff cannot meet the second prong of the test because the decision of whether to allow or restrict inmates from recreation is a daily

6

decision founded in public policy, and thus entitled to immunity under the FTCA.  Id.  (citing to Smith v. Wash. Metro. Area Transit Auth., 290 F.3d 201, 208 (4th Cir. 2002). Defendants contend that the holding of Bell v. Wolfish, 441 U.S. 520, 547 (1979), gives prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  ECF No. 36 at 14.

Defendants also assert that even if the discretionary function exception does not apply to Plaintiff's Claims 1, 3, and 4, those claims still fail, because under the applicable West Virginia state tort law, a defendant can only be held liable for "defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care."  Id. at 17 – 18, citing Drew v. Dillons Furniture, 2022 WL 669257, at *3 – 4 (W.Va. Mar. 7, 2022).  Defendants assert that Plaintiff alleged that the recreation yard "was covered in ice and snow," and that any ice and snow presented an obvious danger to anyone exercising ordinary care.  Id.

Defendants argue that Claim 2 in Plaintiff's FTCA complaint should be dismissed on the merits because Plaintiff received appropriate, timely, and adequate medical care, under the applicable West Virginia state tort law.  ECF No. 36 at 18.  Defendants assert that Plaintiff received timely and appropriate care, starting on February 5, 2021, the date he reported his injuries.  Id. at 19.  Further, Defendants contend that medical staff appropriately adjusted Plaintiff's assigned crutches at the time they were assigned to Plaintiff, and that he was instructed to "ambulate on crutches [but] not walk on [his] foot." Id. at 19 – 20.  However, Defendants assert that on April 8, 2021, Plaintiff appeared at

Health Services without his crutches, and that he admitted to both walking without his crutches for a week, and to working in the laundry facility.  Id. at 20.  Moreover, Defendants argue that Plaintiff failed to request either no work or a new work assignment while his ankle healed.  Id.  According to Defendants, Plaintiff "was frequently evaluated by providers for the nine (9) months or so following the initial February 2021 examination . . . [after he] presented to Health Services on February 5, 2021, and was seen by capable mid-level providers for several months until his referral to an orthopedic specialist in August 2021."  Id. at 21.  Finally, Defendants contend that the orthopedic specialist recommended a "near identical course of treatment".  Id.

### D.      Plaintiff's Response to Motion to Dismiss

On September 15, 2022, Plaintiff filed a Response to Defendants' motion to dismiss, along with multiple exhibits[5].  ECF Nos. 64, 64-1 through 64-5.  Therein, Plaintiff argues that the discretionary function exception does not apply in his case because the BOP failed "to act in accord with a specific mandatory directive."  ECF No. 64 at 14, quoting Berkovitz v. United States, 486 U.S. 531, 544 (1988).  To further support his argument, Plaintiff cites to Bureau of Prisons Program Statement related to Recreation Programs, P.S. 5370.11, which provides in section 8.i. that:

> The Recreation Supervisor must:
>
> i. Assign staff members to inspect recreation equipment and jogging areas weekly and hobbycraft equipment daily. Refer to the Occupational Safety and Environmental Health Manual for safety requirements concerning recreation.
>
> The Supervisor of Recreation will develop a form (or forms) to

---

[5]  Those exhibits include four documents which purport to be affidavits of Marc Hall [ECF No. 64-1, 64-2, 64-3, 64-4], only one of which [ECF No. 64-1] is related to Plaintiff's injuries.  The other three affidavits by Mr. Hall are offered to demonstrate that BOP health services officials have falsified medical records in other cases.

> document the inspection of recreation equipment, jogging
> areas, and hobbycraft equipment (grinders, saws, lathes,
> etc.). Such forms will include:
>
> ● a list of equipment,
> ● date inspected,
> ● findings, and
> ● any corrective action taken.

ECF No. 64 at 15, citing to https://www.bop.gov/policy/progstat/5370_011.pdf.  Plaintiff

argues that the directives in P.S. 5370.11 § 8.i. are mandatory, and thus "do not afford"

the Defendants discretion.  ECF No. 64 at 15 – 16.  Accordingly, Plaintiff contends that

this court properly retains subject matter jurisdiction.  Id. at 16.

Plaintiff further argues that there is a genuine dispute of material fact related to the

timeliness of his medical care provided by Defendants, including whether Plaintiff's referral

to and receipt of orthopedic care was timely.  Id. at 16 – 17.

### E.   Defendants' Reply to Plaintiff's Response

On September 28, 2022, Defendants filed a reply which argued that based on the

Supreme Court's recent decision in Egbert v. Boule, 142 S. Ct. 1793 (2022), Plaintiff's

Bivens claims [of deliberate indifference] against the remaining Individual Defendants

must be dismissed."  ECF No. 68 at 1.  Defendants argue that, "Plaintiff alleges a civil

rights action against the Individual Defendants 'for his injuries caused by a fall in snow or

ice, which Plaintiff alleged was caused by Defendants' deliberate indifference to Plaintiff's

safety, and failure to provide Plaintiff with medical treatment,' which claims Defendants

contend are supervisory in nature and do not involve a life-threatening condition or a

medical emergency.  Id. at 5 – 6.

9

### III.    LEGAL STANDARD

#### A.    Review of Complaints

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and the Court's Local Rules of Prisoner Litigation Procedure, this Court is authorized to review such complaint and submit findings and recommendations to the District Court. This Court is charged with screening Plaintiff's case to determine "any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss, . . . to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action."

#### B.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in Neitzke recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Examples of the former class are claims against which it

---

[6] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

is clear that the defendants are immune from suit. . .

490 U.S. at 327.

### C.    Actions Under the Federal Tort Claims Act (FTCA)

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of the negligent acts of agents of the United States.  The United States cannot be sued in a tort action unless Congress has waived the government's sovereign immunity and authorized suit under the FTCA. <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. §§ 1346(b), 1402(b), 2401(b) and 2671-2680.

In 2021, the Supreme Court issued a decision which summarized the historical precedent which led to the enactment of the FTCA:

> The FTCA streamlined litigation for parties injured by federal employees acting within the scope of their employment. Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability. Despite that immunity, the Government often would provide counsel to defendant employees or indemnify them.  In addition, Congress passed private bills that awarded compensation to persons injured by Government employees.  But by the 1940s, Congress was considering hundreds of such private bills each year.  Critics worried about the speed and fairness with which Congress disposed of these claims.
>
> In 1946, Congress passed the FTCA, which waived the sovereign immunity of the United States for certain torts committed by federal employees acting within the scope of their employment.  The Act in effect ended the private bill system by transferring most tort claims to the federal courts. Plaintiffs were (and are) required to bring claims under the FTCA in federal district court. Federal courts have jurisdiction

> over these claims if they are actionable under § 1346(b).  A
> claim is actionable if it alleges the six elements of § 1346(b),
> which are that the claim be:
>
>  [1] against the United States, [2] for money damages, ... [3]
> for injury or loss of property, or personal injury or death [4]
> caused by the negligent or wrongful act or omission of any
> employee of the Government [5] while acting within the scope
> of his office or employment, [6] under circumstances where
> the United States, if a private person, would be liable to the
> claimant in accordance with the law of the place where the act
> or omission occurred.[7]

Brownback v. King, 141 S. Ct. 740, 746 (2021) (cleaned up and internal citations omitted).

An inmate "can sue under the FTCA to recover damages from the United States

Government for personal injuries sustained during confinement in a federal prison, by

reason of the negligence of a government employee." United States v. Muniz, 374 U.S.

150 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of
> this title relating to tort claims, in the same manner and to the
> same extent as a private individual under like circumstances,
> but shall not be liable for interest prior to judgment or for
> punitive damages.

However, the FTCA does not create a new cause of action. Medina v. United States, 259

F.3d 220, 223 (4th Cir. 2001). "The statute merely "permits the United States to be held

liable in tort in the same respect as a private person would be liable under the law of the

place where the act occurred." Id.

Even where the government has waived sovereign immunity, the FTCA only

---

[7] 28 U.S.C. § 1346(b)(1) provides, "[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

authorizes lawsuits against the United States itself. 28 U.S.C. § 1346(b). Therefore, the United States, not any government employee or agency is the only proper defendant in an FTCA lawsuit. See 28U.S.C. 2679(a); Webb v. Hamidullah, 281 F. App'x 159, 161 n. 4 (4th Cir. 2008) (per curiam) (unpublished) (United States is the only proper defendant in FTCA claim); Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir. 1965) (per curiam) (federal agency cannot be sued pursuant to the FTCA); Allfgeir v. U.S., 909 F.2d 869 (6th Cir. 1990) ("The FTCA clearly provides that the United States is the only proper defendant in a suit alleging negligence by a federal employee").

A constitutional civil rights claim is not cognizable in an FTCA lawsuit. FDIC v. Myer, 510 U.S. 471, 477-79 (noting that a constitutional tort claim is not cognizable in an FTCA lawsuit because the United States has not waived its sovereign immunity with respect to constitutional tort allegations); Blanchard v. United States, No. 2:14cv58, 2015 WL 4107311, at 13 (N.D.W. Va. July 7, 2015), aff'd 622 F. App'x 287 (4th Cir. 2015) (per curiam) (unpublished) (finding that a civil rights claim alleging a violation of the Eighth Amendment prohibition against cruel and unusual punishment is not actionable against the United States in an FTCA lawsuit because a constitutional tort claim is not cognizable under the FTCA.

A number of statutory exceptions apply to the Federal Tort Claims Act, including an exception for any discretionary function, or for any damages related to establishment of a quarantine:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the

13

> failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
>
> . . . .
>
> (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States.

28 U.S.C.A. § 2680.

### D.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim  showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that  a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that  the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.

Plaintiff's complaint was filed *pro se* and therefore the Court must liberally construe his pleadings.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough

14

to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir.

1993); see also Martin, 980 F.2d at 952.

    **E.**   **Motions for Summary Judgment**

    Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

    In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact."  477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

    "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that

there is a genuine issue for trial." Id.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968).  See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV.    ANALYSIS

### A.    Plaintiff's FTCA Claims

As recognized by the Supreme Court in Brownback v. King, 141 S. Ct. at 746, an FTCA claim is actionable if it alleges the six elements of 28 U.S.C. § 1346(b).

Specifically, a successful FTCA claim must be: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the Government; (5) while acting within the scope of his office or employment; and (6) under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

### 1.   FTCA Claims 1, 3, and 4

Plaintiff asserts that he was injured when agents of the United States Bureau of Prisons negligently failed to: (1) properly supervise subordinates to ensure Plaintiff had a reasonably safe pathway in snowy conditions [FTCA Claim 3]; (2) grant Plaintiff work restrictions following his injury, thereby requiring him to stand for work, and exacerbate the injury [FTCA Claim 1]; and supervise "by failure to provide duty of care owed" to Plaintiff [FTCA Claim 4].  5:21-CV-159, ECF No. 1.  Plaintiff identified Warden Hudgins, Captain Haggamyer, and Lieutenant Doe[8] as the wrongdoers who by their negligence proximately caused his slip and fall, subsequent injuries to his ankle, and exacerbation of those injuries.  Id. at 9.

Defendants' memorandum in support of the motion to dismiss argues that the discretionary function exception to the FTCA excludes the United States from liability for Claims 1, 3, and 4.  ECF No. 36.  The Fourth Circuit has previously recognized that when the Government argues that the discretionary function exception applies, it is essentially an assertion that the court lacks subject matter jurisdiction.  Tyree v. United States, 814

---

[8]  To the extent that these individuals, Hudgins, Haggamyer, and Doe, are named as wrongdoers as asserted in Plaintiff's FTCA claim, they acted as agents of the government. The Court notes that the only named defendant in the FTCA claim is the United States of America.

F. App'x 762, 766 (4th Cir. 2020).  The Court agrees with Defendants' argument that the discretionary function exception applies here, rendering Plaintiff's Claims 1, 3, and 4 unactionable.

The discretionary function exception is codified in subsection (a) of the exceptions statute:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.  The Fourth Circuit restated the test used to decide whether the discretionary function applies in Rich v. United States, 811 F.3d 140, 144 (4th Cir. 2015) (internal citations omitted):

> To determine whether conduct qualifies for the discretionary function exception, courts apply a two-pronged test. First, a court considers whether the challenged governmental conduct involves an element of judgment or choice.  When a statute, regulation, or policy prescribes a specific course of action, there is no discretion and the exception does not apply. Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy.
>
> The discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

In <u>Blanco Ayala v. United States</u>, 982 F.3d 209, 214–15 (4th Cir. 2020), the Fourth Circuit further summarized the analysis which must be performed to determine whether the discretionary function exception bars an FTCA claim:

> To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. 1954.
>
> Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537, 108 S.Ct. 1954. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, ... is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

To meet the first prong of the <u>Blanco Ayala</u> analysis, the Plaintiff must establish that the Government's agents whom he accuses of negligence were not performing a discretionary function at the time he alleges he was injured.  To meet that standard, Plaintiff must establish that the Government was not exempt from the FTCA pursuant to 28 U.S.C. § 2680(a).  However, it is clear that Plaintiff is unable to demonstrate either fact.

BOP employees appear to have engaged in a discretionary function in determining

20

whether to permit inmates to have recreation.  The BOP is charged with the discretionary duty of care to maintain order within its facilities pursuant to 18 U.S.C. § 4042.  That statute provides in pertinent part, that, "[t]he Bureau of Prisons under the direction of the Attorney General, shall . . . provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."

Plaintiff asserts that the recreation yard was covered in snow and ice.  5:21-CV-159, ECF No. 1 at 9.  Further, Plaintiff contends in his response to the motion to dismiss, that "the ice was a hidden, unnatural condition beneath and mixed in with the snow and the shovel crew 'did not' shovel the recreation areas," and "the ice was unexpected and not obvious."  ECF No. 64 at 7.

Defendants "in no way concede[ ] that the conditions in the Recreation Area were snowy, icy, or dangerous."  ECF No. 36 at 13.   However, Defendants contend that regardless of the actual conditions of the recreation area on February 3, 2021, "courts in this Circuit consistently recognize that decisions regarding safety and maintenance fall within the discretionary function exception."  Defendants cite to four decisions[9] from within the Fourth Circuit which support that contention.  Defendants further assert that the "open and obvious doctrine" codified at W.Va. Code § 55-7-28, prevents Plaintiff from recovery, because the dangers of ice and snow are "open, obvious, reasonably apparent or as well known to the person injured as they are to the owner or occupant, [who] shall not be held liable for civil damages for any injuries sustained as a result of such dangers."  ECF No.

---

[9] Baum v. United States, 986 F.2d 716 (4th Cir. 1993); Hawes v. United States, 322 F.Supp. 2d 638 (E.D.Va. 2004), aff'd, 409 F.3d 213 (4th Cir. 2005); Stephenson v. United States, 2017 WL 5760451 (S.D.W.Va. Nov. 28, 2017); and Harris v. United States, 2006 WL 2583435 (N.D.W.Va. Sept. 6, 2006). ECF No. 36 at 11 – 13.

36 at 16.

Although there are no cases from the Fourth Circuit which specifically address the removal of snow or ice in relation to the discretionary function exception, a case from Alaska, Bolt v. United States, 509 F.3d 1028 (9th Cir. 2007), is instructive.  There, the Ninth Circuit upheld the district court's finding that the discretionary function exception did not apply to the plaintiff's case because:

> Alaska imposes a statutory duty on civilian landlords to "keep all common areas of the premises in a clean and safe condition," Alaska Stat. § 34.03.100(a)(2), a duty that includes an obligation to remove snow and ice, *see Coburn v. Burton,* 790 P.2d 1355, 1358 (Alaska 1990) (applying Alaska Stat. § 34.03.100(a)(2)).  Pursuant to § 2674, the government is liable for its employees' negligence "in the same manner and to the same extent as a private individual under like circumstances."  Because an Alaska landlord would be liable to a private individual under like circumstances, Bolt adequately alleged a claim under the FTCA based on the Army's failure to clear the common parking area of snow and ice.

509 F.3d at 1031.  Alaska's state law mandating removal of snow and ice was the determinative factor in finding that the discretionary function exception did not apply in Bolt.  However, there is no comparable statute in West Virginia.  Rather, the "open and obvious doctrine" codified at W.Va. Code § 55-7-28, requires the injured party to observe the conditions present.  Further, Defendants cite to Drew v. Dillons Furniture, 2022 WL 669257 (W.Va. Mar. 7. 2022), to support their claim that Plaintiff assumed "all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers."  ECF No. 36 at 16.

As cited by Defendants, the applicable federal statute for the duty of care owed to federal inmates who are incarcerated in West Virginia is 18 U.S.C. § 4042(a). Accordingly, decisions made by BOP officials related to the safekeeping, care, and subsistence of inmates, including appropriate conditions for recreation, rest firmly within the discretionary function of those officials.

To the extent that Plaintiff argues that BOP employees were mandated to take specific action based on the BOP P.S. 5370.11, § 8.i., he is unable to cite to authority which supports that claim.    https://www.bop.gov/policy/progstat/5370_011.pdf.    BOP Program Statement 5370.11 is a 15-page document on recreation programs for inmates. The program statement does not specify any mandatory duty to remove snow or ice from recreation areas.  Section 8.i. of P.S. 5370.11 instructs BOP employees to, "[r]efer to the Occupational Safety and Environmental Health Manual for safety requirements concerning recreation."

BOP Program Statement 1600.11, titled "National Occupational Safety and Health Policy", Chapter 2. Occupational Safety, paragraph 3, titled "Walking-Working Surfaces OSHA" provides in pertinent part:

> The following basic requirements apply to common work surfaces in this section: a. Stairs and Walkways. Floors and stairways must be maintained in a clean, dry manner and free of nails, splinters, holes, loose boards, corrosion, snow, or ice.

https://www.bop.gov/policy/progstat/1600_011.pdf.  The recreation yard of Hazelton does not appear to be a "common work surface", as contemplated by P.S. 1600.11.  However, the manner in which BOP employees enact the Program Statement have a component of discretion.  Neither P.S. 5370.11, nor P.S.1600.11 specify the manner in which walking areas are to be cleared.  The method for clearing those areas is left to the discretion of

BOP employees.

Plaintiff cites to P.S. 5370.11 and argues that the recreation areas was to be inspected weekly for dangers, but does not argue or demonstrate that the recreation area was not inspected weekly. ECF No. 64 at 15. Rather, Plaintiff asserts that the requirement to inspect is mandatory, that he was injured despite the inspection requirement, and that BOP employees do not exercise discretion in inspecting the recreation area. Id.

BOP employees exercised discretion as to: (1) the manner in which to inspect the recreation yard each week; (2) whether the recreation yard was sufficiently clear of ice or snow on February 3, 2021; (3) the manner in which to remove any found ice or snow on February 3, 2021; and (4) whether to provide recreation to inmates on February 3, 2021. Those decisions are subject to the discretionary function exception to liability under the Federal Tort Claims Act. As such, Plaintiff cannot meet the first prong of the Blanco Ayala test, and his claim fails.

Although Plaintiff cannot meet the first prong of the Blanco Ayala test, nor can he meet the second prong of the Blanco Ayala test, Plaintiff is also incapable of demonstrating that he is entitled to relief. The FTCA's discretionary function exception only applies to discretionary conduct that is based on social, economic, or political goals. Where an established government policy—such as the BOP policies related to the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States—allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 US at 324. Therefore, a complaint cannot survive a motion to dismiss

24

unless it alleges facts that would support a finding that "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324 – 25.  Congress in enacting 18 U.S.C. § 4042, granted to BOP employees discretion with respect to how to best ensure the safekeeping, care, and subsistence for all inmates in their suitable quarters.  Such responsibility is based on the considerations of public policy related to inmate safety and welfare.  Accordingly, the decision of BOP staff related to inmate recreation, falls within the discretionary function exception to the FTCA.

Accordingly, to the extent that the Plaintiff alleges that BOP employees' actions on February 3, 2021, by permitting him and other inmates to have recreation in the prison yard, the United States is immune from liability.  The discretionary function exception is applicable to the actions of the BOP's employees regarding recreation on that date.

Because Defendant is immune from suit under the Federal Tort Claims Act when the act or omission complained of is covered by the discretionary function exception, Plaintiff's complaint fails.  Even if Plaintiff demonstrated that he meets all six prongs to assert a cause of action under the FTCA, his claim still fails.  Regardless of whether the alleged injuries he suffered on February 3, 2021, were caused by the negligent or wrongful act or omission of any employee of the Government, the discretionary function exception still applies, and his claims are not actionable under the FTCA.

For all of these reasons, the undersigned recommends that the District Court dismiss Plaintiff's FTCA Claims 1, 3, and 4 with prejudice, because Plaintiff fails to state a claim upon which relief may be granted.

### 1. FTCA Claim 2

Plaintiff claims that Defendants committed a "medical negligence breach of duty" on February 3, 2021, when Plaintiff returned to his cell, and requested, but was denied medical treatment.  ECF No. 1 at 7, 14 – 15.  More specifically, Plaintiff asserts that: (1) BOP medical staff refused him treatment on February 3, 2021; (2) he was provided crutches that were too small on February 5, 2021; (3) that medical staff did not issue him a "restricted duty work status" on February 5, 2021, and again on July 12, 2021, which forced Plaintiff to continue standing for work, which he claims exacerbated his injury; and (4) BOP medical staff delayed Plaintiff from consulting with an outside orthopedist to treat his injury.  5:21-CV-159, ECF No. 1 at 14 – 16.  Plaintiff further asserts that he did not receive medical treatment until his daughter made several phone calls to Hazelton to complain about his lack of treatment.  Id. at 10.

Defendants contend that Plaintiff did not report his injury until February 5, 2021, two days after he incurred it, which contention is supported by the records provided by Defendants.  ECF Nos. 36, 36-2.  Further, Defendants contend that Plaintiff's daughter did not contact the institution about his injuries, because if she had, such a call would have been documented, which it was not.  ECF No. 36-2 at 3.  Additionally, Defendants state that even if a family had called the institution, no medical information could have been shared with that individual because Plaintiff did not have a medical release of information prepared and filed with Hazelton.  Id.

Moreover, Defendants assert that Plaintiff's medical treatment was timely and appropriate, and that on February 5, 2021, "two days after the slip-and-fall, Plaintiff advised BOP officers that he injured his ankle on February 3, 2021."  ECF No. 36 at 19.  Defendants

26

state, and the medical records confirm, that on February 5, 2021, medical staff: examined Plaintiff; obtained an x-ray of Plaintiff's ankle; documented a fracture to Plaintiff's ankle; provided Plaintiff a stirrup splint, crutches, cast shoe and Ibuprofen; and instructed Plaintiff to ambulate on crutches, and not to walk on his foot.  ECF No. 36-2 at 12 – 14.   However, when Plaintiff reported to medical on April 8, 2021, he arrived without crutches, walking on his fractured ankle.  Id. at 20.  Further, at that time Plaintiff admitted he had been walking without crutches for about a week.   Over the next seven months, Plaintiff's ankle was repeatedly x-rayed, and a May 2022 MRI revealed the ankle was incompletely healed. ECF Nos. 36 at 20, 36-2.  Defendants contend that the "only reasonable explanation for Plaintiff's chronic [injury] is his failure to follow medical advice at the early stages of his treatment."  ECF No. 36 at 20.  Further, Defendants argue that Plaintiff did not request a different work assignment or request no work assignment while his ankle fracture healed. Id.

In his response to Defendants' motion to dismiss or for summary judgment, Plaintiff did not assert that he ***requested but was denied*** work accommodations.  ECF No. 64. Rather, he relied upon his prior argument that he was ***not offered*** a work accommodation. Id.

As to the merits of Plaintiff's medical negligence claim, such claims raised in FTCA proceedings are governed by the law of the state where the tort is alleged to have been committed.  Because Plaintiff asserts that he was injured in West Virginia, West Virginia State law governs his claim.  The applicable statute provides:

> (a) The following are necessary elements of proof that an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:

(1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and

(2) Such failure was a proximate cause of the injury or death.

W. Va. Code Ann. § 55-7B-3.

It is clear from the records submitted by Defendants that Plaintiff received medical treatment from an MD, Certified Physician Assistant (PA-C), Family Nurse Practitioner (FNP), or a Board Certified Family Nurse Practitioner (FNP-BC), on twelve dates from February through November 2021, with one appointment each month, and two appointments in June and November 2021.  ECF No. 36-2.  Additionally, Plaintiff's ankle was x-rayed monthly, and he was given an MRI in May 2021, to monitor his progress. Plaintiff was seen on August 20, 2021, by an orthopedist, Chris Vasilakis, MD, because his fracture had not fully healed after six months.  Id. at  38.  The physician's notes stated, "Xrays [sic] from 2 months ago reveal delayed healing. He is able to bear full weight with the Cam walker."  Id.

Plaintiff claims he did not receive timely or appropriate care for his ankle fracture. Under W.Va. Code § 55-7B-3, to merit relief for such a claim, Plaintiff must demonstrate that "[t]he health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances."  Plaintiff fails to demonstrate such a failure of care.  Plaintiff's assertions that he was initially denied care from February 3, 2021, until February 5, 2021, is not supported by the records submitted by the parties.  The records show that Plaintiff first

28

reported his injury on February 5, 2021.  Starting on that date, Plaintiff was given an x-ray, diagnosed with a fractured ankle, and instructed to not put weight on the injured foot until he was given medical clearance to do so.  Thereafter, Plaintiff was further offered regular, monthly care, but demonstrated that he failed to follow all medical advice by appearing without crutches on April 8, 2021.  Plaintiff's failures to report his injury for two days, and to follow medical advice, do not support a claim that the health care provider failed to offer appropriate care.  Additionally, although Plaintiff contends that his fracture was exacerbated by not having a medical work accommodation, the record does not support that Plaintiff ever requested such an accommodation, despite being directed not to put weight on the injured foot, until given medical clearance to do so.

Further, the medical records submitted by Defendants show that: (1) Plaintiff received regular monthly medical care following his February 2021 injury; (2) x-rays taken in April 2021, show that Plaintiff's fractured ankle had not completely healed; (3) less than two months[10] after initial injury, Plaintiff failed to follow medical recommendations to not walk on his foot; (4) MRI taken in May, 2021, also show that Plaintiff's ankle fracture failed to completely heal; (5) when orthopedic specialist Dr. Vasilakis saw Plaintiff on August 20, 2021, six months after fracture, "[t]he ankle is stable to inversion and eversion. The lateral ankle ligaments are minimally tender to palpation. There is no ankle joint swelling".

For all of the above reasons, the Court finds that Plaintiff has failed to demonstrate that BOP health care providers "failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider".  Accordingly, the

---

[10]  According to Plaintiff, his injury occurred on February 3, 2021.  When he appeared for a medical appointment on April 8, 2021, Plaintiff was walking without crutches, putting weight on his injured foot, and reported doing so for about a week.

undersigned finds that Plaintiff fails to state a claim upon which relief may be granted as to his second FTCA claim for medical negligence, and recommends that the claim be dismissed with prejudice.

### B.  Plaintiff's Bivens Claims

Plaintiff was notified by the Court on September 20, 2021, of the consequences of pursuing both a Federal Tort Claim Act and a Bivens action.  ECF No. 6.  Therein, the Court advised Plaintiff "that a judgment under the FTCA constitutes 'a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim.' 28 C.F.R. § 2676."  Id. at 1.  The Court explicitly advised Plaintiff that if he "elects to pursue his remedy under the FTCA to judgment, he risks dismissal of his Bivens claim because the Bivens claim arises from 'the same subject matter and is against the same employees whose act or omission gave rise to the claim.' "  Id.  Plaintiff elected to pursue both claims.  ECF No. 8.  The recommendation that Plaintiff's FTCA claim is without merit, means that Plaintiff's Bivens claim also fails and should be dismissed with prejudice.  Nevertheless, the Court finds that Plaintiff's Bivens claim is also meritless based on his failure to exhaust his administrative remedies prior to filing his Bivens complaint.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997e(a).  "Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.  Failure to exhaust may only be excused upon a showing of cause and prejudice."  McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (citing Carmona v. United States Bureau of

Prisons, 243 F.3d 629, 634-35 (2d Cir.2001), Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981)).  Exhaustion as provided in § 1997e(a) is mandatory, regardless of the relief offered through administrative procedures.  Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.   Porter v. Nussle, 534 U.S. 516, 524 (2002) (citing Booth, 532 U.S. at 741).   "Those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524.

Although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, if the failure to exhaust is apparent from the face of the complaint, the court has the authority under 28 U.S.C. § 1915 to dismiss the case sua sponte.  Custis v. Davis, 851 F.3d 358, 361 (2017) ("A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies.")

In his complaint, Plaintiff admits he knew there was a grievance procedure at USP Hazelton.  ECF No. 1 at 4.  However, Plaintiff contends that he was "not required" to exhaust his administrative remedies during the pleading stage.  Id. at 5.  Plaintiff does not claim that he was denied administrative remedy forms, or was otherwise prevented from pursuing administrative remedies.  Id.  Nor does he indicate that he asked for any such forms.  Id.

Plaintiff filed his complaint on the Court-approved form for a Bivens action in this district, which includes six pages of instructions.  https://www.wvnd.uscourts.gov/forms, Pro Se Forms, Bivens Action.  On page 1 the instructions provide, "You may not bring an action challenging prison conditions **UNTIL YOU HAVE EXHAUSTED ALL**

**AVAILABLE ADMINISTRATIVE REMEDIES**, including any grievance system.  See 42

U.S.C. § 1997e(a)." Id. (emphasis in original).  Although Plaintiff was able to exhaust his

remedies for his FTCA claim, however, it is clear that he failed to do so for his claims

asserted pursuant to Bivens.

Filed with Defendants' motion to dismiss or for summary judgment, were exhibits

related to Plaintiff's administrative remedies, which show that Plaintiff did not exhaust his

remedy at the Central Office as relates to the claims contained in his Bivens complaint.

ECF No. 36-3.  One of those exhibits is the declaration of Misty Shaw, a paralegal at the

Mid-Atlantic Regional Office of the Federal Bureau of Prisons.  Id. at 2.  Ms. Shaw states

that Plaintiff "has filed a total of four (4) administrative remedies since being in BOP

custody.  Of those four (4) administrative remedies, three (3) [ ] claim injury from a fall."

Id. at 4.  Ms. Shaw's declaration further summarizes Plaintiff's administrative remedies

filings:

> On March 9, 2021, FCC Hazelton received Plaintiff's
> Administrative Remedy 1071930-F1.[11] [ ] The appeal was
> rejected (REJ) with the status reason of INF and MSI. INF
> indicates the Plaintiff did not attempt informal resolution, and
> MSI indicates the Plaintiff did not provide specific information.
>
> On April 2, 2021, the Mid-Atlantic Regional Office received
> Plaintiff's Administrative Remedy 1071930-R1. [ ] The appeal
> was rejected (REJ) with the status reason of IRQ and RSR.
> IRQ indicates the Plaintiff did not provide a copy of the
> institution administrative remedy request (BP-9), a receipt, or
> did not provide a verified photocopy. RSR indicates the

---

[11]  According to Ms. Shaw, each administrative grievance is assigned a specific remedy ID. The numerical portion of the Remedy ID before the hyphen is known as the Case Number which is used to track subsequent submissions or appeals of the same administrative grievance. Following the hyphen, there is a Submission ID comprised of one letter and one number. The letter indicates which level of the BOP administrative remedy program has received the grievance. The letter "F" indicates that the submission was received by an individual federal correctional facility. The subsequent number indicates the number of times an inmate has submitted the same request at the same level of the BOP grievance program. The letter "R" indicates that the submission was received by individual regional office.  The letter "A" indicates that the submission was received by the BOPs Central Office.  ECF No. 37-3 at 3.

> Plaintiff may resubmit the appeal in proper form within fifteen
> (15) days.
>
> On April 30, 2021, the BOP General Counsel received
> Plaintiff's Administrative Remedy 1071930-A1. [ ] The appeal
> was rejected (REJ) with the status reason of WRL OTH. WRL
> indicates that Plaintiff submitted the request or appeal to the
> wrong level or wrong office, and OTH indicates "see remarks."
> The remarks section instructs the inmate to resubmit at
> institution level with unanswered BP-8.

Id. Ms. Shaw concludes that, "[n]o further documentation was submitted by Plaintiff, and therefore, he has failed to exhaust through the administrative remedy process prior to filing the instant lawsuit." Id. at 5.

In Jones v. Bock, 549 U.S. 199, 216 (2007), the United States Supreme Court concluded that "failure to exhaust is an affirmative defense under the PLRA." Although the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise," the Court held "that Congress has provided in 1997e(a) that an inmate must exhaust [his claims] irrespective of the forms of relief sought and offered through administrative avenues." Booth, 532 U.S. at 741, n.6. Several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust is not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x. 295, 296 (5th

33

Cir. 2003) ("If the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner.")   Consistent with other Circuits, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."   Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citing Aguilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006)).   Here, Plaintiff filed administrative remedies but failed to properly exhaust those claims.   Because exhaustion has not occurred, this court is without jurisdiction to consider Plaintiff's claims asserted under Bivens.

In Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 - 95 (1998), the Supreme Court wrote that "without jurisdiction the court cannot proceed at all in any cause.   Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."   See also Reinbold v. Evers, 187 F.3d 348, 359 n. 10 (4th Cir. 1999).   Because this court lacks jurisdiction, this court cannot entertain Plaintiff's Bivens complaint.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's complaint against the United States of America (5:21-CV-159, ECF No. 1) be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.   It is further **RECOMMENDED** that Plaintiff's Bivens complaint against Defendants Hudgins, Haggamyer, and Doe be **DISMISSED WITH PREJUDICE** based

on the disposition of Plaintiff's FTCA claim.   Alternatively, it is **RECOMMENDED** that Plaintiff's Bivens complaint be dismissed without prejudice based on his failure to exhaust his administrative remedies.

It is further **RECOMMENDED** that Defendants' motion to dismiss or for summary judgment [ECF No. 35] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.**  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in

the Administrative Procedures for Electronic Case Filing in the United States District Court

for the Northern District of West Virginia.

        DATED:        October 21, 2022

                        /s/ *Robert W. Trumble*
                        ROBERT W. TRUMBLE
                        UNITED STATES MAGISTRATE JUDGE